PD-0539-15

PD-0539-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/8/2015 12:21:00 PM
Accepted 5/8/2015 1:11:04 PM
ABEL ACOSTA
CLERK

## THE COURT OF CRIMINAL APPEALS OF TEXAS

CHRISTOPHER YARBOROUGH, §
  APPELLANT    §
         §
v.          §    No. _____
         §
THE STATE OF TEXAS,   §
  APPELLEE     §

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW OF THE DECISION OF THE COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS IN CAUSE NUMBER 02-14-00117-CR AFFIRMING THE DECISION IN CAUSE NUMBER 1313733D IN THE CRIMINAL DISTRICT COURT NUMBER TWO OF TARRANT COUNTY, TEXAS, THE HONORABLE WAYNE F. SALVANT PRESIDING.

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

May 8, 2015

ABEL ACOSTA, CLERK

**Barry J. Alford**
**State Bar No. 00783534**
**1319 Ballinger Street**
**Ft. Worth, Texas 76102**
**Telephone: (817) 335-5229**
**Facsimile: (817) 335-4944**
**E-mail: barryalford13@gmail.com**

**Attorney for Appellant**

## IDENTITY OF PARTIES AND COUNSEL

1.   Mr. Christopher Yarborough, Defendant in the trial court, Appellant in this appeal, TDC #01922266, 3872 F.M. 350 South, Allan B. Polunsky Unit, Livingston, Texas 77351.

2.   Hon. Wayne Salvant, presiding Judge in the trial court, Criminal District Court Number Two of Tarrant County, Texas, 401 West Belknap, Fort Worth, Texas 76196.

3.   Hon. Sherry Armstrong, Assistant Criminal District Attorney, Counsel for the State in the trial court, 401 West Belknap, Fort Worth, Texas 76196.

4. Hon. Jim Shaw, Counsel for Appellant at trial, 916 W. Belknap, Fort Worth, Texas 76102.

5. Hon. Barry Alford, Counsel for the Appellant on appeal, 1319 Ballinger, Fort Worth, Texas 76102.

6.   Hon. Debra Windsor, Assistant Criminal District Attorney, Counsel for the State on appeal, 401 West Belknap, Fort Worth, Texas 76196.

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ...................................................... i

TABLE OF CONTENTS ....................................................................... ii

INDEX OF AUTHORITIES ................................................................... iv

STATEMENT REGARDING ORAL ARGUMENT ................................. vi

STATEMENT OF THE CASE ................................................................ 1

STATEMENT OF PROCEDURAL HISTORY ........................................ 2

QUESTIONS PRESENTED FOR REVIEW .............................................. 4

I.    DID THE COURT OF APPEALS PROPERLY APPLY THE STANDARD IN DETERMINING THAT THE SEARCH WARRANT AFFIDAVIT WHICH WAS THE BASIS FOR THE SEIZURE OF THE METHAMPHATINE IN QUESTION WAS SUPPORTED BY PROBABLE CAUSE?

II. DID THE COURT OF APPEALS PROPERLY DETERMINE THAT EVDENCE PRESENTED AT TRIAL WAS LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR POSSESSION OF A CONTROLLED SUBSTANCE 1 – 4 GRAMS – PG1 WITH INTENT TO DELIVER?

III. DID THE COURT OF APPEALS ERR IN FINDING THAT THE TRIAL COURT'S RULING IN FAVOR OF APPELLANT ON A MOTION FOR DIRECTED VERDICT AND SUBSEQUENT REVERSAL OF THAT RULING DID NOT RISE TO THE LEVEL OF DOUBLE JEOPARDY?

REASONS FOR REVIEW AND ARGUMENT AND AUTHORITIES ..... 5

PRAYER FOR RELIEF ....................................................................... 20

CERTIFICATE OF SERVICE ................................................................. 21

OPINION OF THE COURT OF APPEALS ............................... EXHIBIT A

iii

## INDEX OF AUTHORITIES

*Benton v. Maryland,*
395 U.S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969)............................... 16

*Brown v. State,*
270 S.W.3d 564 (Tex.Crim.App. 2008),
*cert. denied,* 529 U.S. 1131 (2000) ................................................... 11

*Burke v. State,*
27 S.W.3d 651 (Tex. App. – Waco, 2000, pet. ref'd) .................................... 7

*Clayton v. State,*
235 S.W.3d 772 (Tex.Crim.App. 2007) ........................................ 10, 11, 15

*Dewberry v. State,*
4 S.W.3d 735 (Tex.Crim.App. 1999),
*cert. denied,* 529 U.S. 1131 (2000) ................................................... 12

*Evans v. Michigan,*
568 U.S. ____, 133 S. Ct. 1069, 185 L.Ed.2d 124 (2013) ........................... 18

*Ex parte Peterson,*
738 S.W.2d 688 (Tex. Crim. App. 1987) ............................................. 16

*Green v. United States,*
355 U.S. 184, 188, 78 S. Ct. 221, 2 L.Ed.2d 199 (1957) ............................ 18

*Hooper v. Sate,*
214 S.W.3d 9 (Tex.Crim.App. 2007) ................................................. 14

*Illinois v. Gates,*
462 U.S. 213, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983)........................... 6, 7, 8

*Illinois v. Vitale,*
447 U.S. 410, 100 S. Ct. 2260, 65 L.Ed.2d 228 (1980)............................... 16

*Jackson v. Virginia,*
443 U.S. 307, 99 S.Ct. 2781 (1979) ........................................ 10, 11, 15

iv

*Jenkins v. State,*
    76 S.W.3d 709 (Tex. App. – Corpus Christi 2002, pet. ref'd) .............. 12, 14

*Meeks v. State,*
    851 S.W.2d 373 (Tex. App. – Houston [1st Dist.], 1993, pet. ref'd) .............. 8

*Moreno v. State,*
    294 S.W.3d 594 (Tex. Crim. App. 2009) ................................................. 16, 17

*Ramos v. State,*
    934 S.W.2d 358 (Tex. Crim. App. 1996) ........................................................ 8

*Torres v. State,*
    805 S.W.2d 418 (Tex. Crim. App. 1991) ...................................................... 16

## STATUTES, CODES, AND RULES

Tex. Const. art. 1, sec. 14 ..................................................... 15, 16

Tex. Code Crim. Proc. Ann art. 18.01(b) (Vernon 1979) ............................. 8

Tex. Code Crim. Proc. Ann art. 38.04 (Vernon 1979) ............................... 11

Tex. Health and Safety Code sec. 481.112 (C) ........................................ 1, 15

Tex. R. App. P. 66.3(f) ............................................................... v

Tex. R. App. P. 66 ..................................................................... 1

Tex. R. App. P. 68 ..................................................................... 1

U.S. Const. amend. V ............................................................... 15, 16

# STATEMENT REGARDING ORAL ARGUMENT

This case address important issues regarding whether the Court of Appeals has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of this Court's power of supervision. Tex. R. App. P. 66.3(f). Appellant argues the Court of Appeals erred by holding that: 1) the trial court did not err by denying Appellant's motion to suppress based on the issuing magistrate's determination that the search of the apartment in question would probably uncover methamphetamine and evidence of its distribution, 2) viewing all of the evidence in the light most favorable to the prosecution and excluding the testimony of Appellant's co-defendant Bass, the logical force of the evidence lends itself to the conclusion that Appellant legally and factually possessed methamphetamine and 3) because the trial court acted within its authority by withdrawing its initial grant of a directed verdict in favor of Appellant after further argument by the parties, no double jeopardy violation occurred.

Because of these important issues, oral argument will greatly aid the Court and should be granted.

vi

THE COURT OF CRIMINAL APPEALS OF TEXAS

| | | |
|---|---|---|
| CHRISTOPHER YARBOROUGH, | § | |
| APPELLANT | § | |
| | § | |
| v. | § | No. _____ |
| | § | |
| THE STATE OF TEXAS, | § | |
| APPELLEE | § | |

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Appellant, through counsel, files this Petition for Discretionary Review pursuant to Tex. R. App. P., Rules 66 and 68 on behalf of Appellant urging that this Court grant his relief on appeal from the judgment of the Court of Appeals in the Second District of Texas in cause number 02-14-00117-CR from a conviction that was obtained in Criminal District Court Number Two in Tarrant County, Texas.

## STATEMENT OF THE CASE

This case addresses whether the Appellant is entitled to relief from his conviction for the offense of possession with intent to deliver methamphetamine in the amount of one gram or more but less than four grams. Tex. Health and Safety Code 481.112(c) (West 2010). Specifically, Appellant contends that the Court of Appeals erred in finding that the search

warrant affidavit which led to the seizure of the methamphetamine in question was not vague and ambiguous but rather that it was sufficient within the four corners of the affidavit to establish probable cause. Secondly, Appellant contends that the Court of Appels erred in concluding that the evidence was sufficient to support the conviction of Appellant. Finally, Appellant requests relief from the judgment of the Court of Appeals in deciding that the trial court's granting of Appellant's motion for instructed verdict and subsequent reversal of that ruling did not constitute double jeopardy. It is for these reasons that Appellant seeks relief.

## STATEMENT OF PROCEDURAL HISTORY

Appellant was arrested for possession with intent to deliver methamphetamine of one gram or more but less than for grams on or about January 31, 2013. Through counsel, he waived a jury and pled not guilty to the Court. The Court found him guilty on or about March 28, 2014. CR-43; R. III-263. Appellant was sentenced to twenty (20) years in the Institutional Division of the Texas Department of Criminal Justice. CR-45; R. IV-47. Appellant filed notice of appeal on March 28, 2014. CR-61.

This case was submitted before the Court of Appeals for the Second District of Texas on or about January 6, 2015. On or about April 16, 2015,

2

in a 2-1 decision, the Court of Appeals Judgment affirmed the trial court's decision, finding that:

1. The trial court did not err by denying Appellant's motion to suppress based on the issuing magistrate's determination that the search of the apartment would probably uncover methamphetamine;

2. The logical force of the evidence lends itself to the conclusion that Appellant possessed the methamphetamine; and

3. Because the trial court acted within its authority by withdrawing its initial grant of a directed verdict in favor of Appellant, after further argument by the parties, no double jeopardy violation occurred.

# QUESTIONS PRESENTED FOR REVIEW

I. DID THE COURT OF APPEALS PROPERLY APPLY THE STANDARD IN DETERMINING THAT THE SEARCH WARRANT AFFIDAVIT WHICH WAS THE BASIS FOR THE SEIZURE OF THE METHAMPHATINE IN QUESTION WAS SUPPORTED BY PROBABLE CAUSE?

II. DID THE COURT OF APPEALS PROPERLY DETERMINE THAT EVDENCE PRESENTED AT TRIAL WAS LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR POSSESSION OF A CONTROLLED SUBSTANCE 1 – 4 GRAMS – PG1 WITH INTENT TO DELIVER?

III. DID THE COURT OF APPEALS ERR IN FINDING THAT THE TRIAL COURT'S RULING IN FAVOR OF APPELLANT ON A MOTION FOR DIRECTED VERDICT AND SUBSEQUENT REVERSAL OF THAT RULING DID NOT RISE TO THE LEVEL OF DOUBLE JEOPARDY?

## REASONS FOR REVIEW AND ARGUMENT AND AUTHORITIES

**I.   DID THE COURT OF APPEALS PROPERLY APPLY THE STANDARD IN DETERMINING THAT THE SEARCH WARRANT AFFIDAVIT WHICH WAS THE BASIS FOR THE SEIZURE OF THE METHAMPHATINE IN QUESTION WAS SUPPORTED BY PROBABLE CAUSE?**

The Court of Appeals held that the trial court did not err by denying Appellant's motion to suppress the search of his residence based on the issuing magistrate's determination that the search warrant affidavit contained sufficient facts to justify a conclusion that a search of the apartment would probably uncover methamphetamine and evidence of its distribution. *See* Exhibit A at 8. Appellant argues that the evidence raised at trial cast a doubt as to whether probable cause existed within the search warrant affidavit.

Specifically, Appellant contends that the language contained in the search warrant which resulted in the confiscation of controlled substances and, ultimately, the arrest of Appellant is not supported by probable cause and is, therefore, fundamentally lacking. The facts set forth within the four corners of the affidavit did not support a reasonable belief that the object of

the search, controlled substances, were probably at the residence at the time the warrant was issued.

Appellant contends that the affidavit failed to state how the confidential informant knew that Appellant or his co-defendant, girlfriend Kristi Jo Bass, were selling methamphetamine, that the officers did not witness the controlled buy and had to rely on the confidential informant's statements of what he saw in the apartment and that the detective could not rely on other officer's determinations that the confidential informant had been credible in the past. *See* Exhibit A at 6. The Court of Appeals held that such information contained with the search warrant affidavit was sufficient to sustain a search. Appellant contends that the Court of Appeals' ruling was incorrect.

A search warrant must be based on probable cause. Probable cause sufficient to support the issuance of a search warrant exists where the facts contained within the four corners of the affidavit and the reasonable inferences drawn therefrom justify the magistrate's conclusion that the property that is the object of the search is probably on the premises to be searched at the time the warrant issues. *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983).

6

The Court of Appeals held that, although the affidavit does not state whether any officer maintained surveillance on the informant during the controlled buy, it is not necessary for an officer to have done so to present a magistrate with sufficient facts to reasonably conclude that a search of the apartment would probably reveal methamphetamine and evidence of its distribution, especially in light of the detective's statements regarding the confidential informant's credibility. *See* Exhibit A at 7.

However, Appellant argues that, if a magistrate is to view an affidavit from the facts contained within the four corners of that document alone, more credible facts should be needed in order to satisfy probable cause. The Court in *Gates* writes about these types of "bare-bones affidavits" which is nothing more than a conclusory statement presented to the magistrate. *Illinois v. Gates*, 462 U.S. at 239. The instant case presents a bare-bones affidavit that has no supporting facts and no evidence of any corroborating investigation on the part of law enforcement. The probable cause to support the issuance of a search warrant is determined from the "four corners" of the affidavit alone. *Burke v. State*, 27 S.W.3d 651 (Tex. App. – Waco 2000, pet ref'd).

Under the totality of the circumstances, the affidavit in the instant case indicates only that a third person had possessed methamphetamine on their person while at the residence in question. Since there was no evidence of any corroborative investigation within the four corners of the search warrant and the tips are anonymous and have no indicia of reliability, there can be no finding of probable cause. See also, *Meeks v. State,* 851 S.W.2d 373 (Tex. App. – Houston [1st Dist.], 1993, pet. ref'd), holding that probable cause for the search warrant was lacking because nothing in the affidavit corroborated the informant's allegation.

A search warrant may not issue unless sufficient facts are presented to the magistrate which permit him to conclude that probable cause exists supporting the warrant's issuance. Tex. Code Crim. Proc. Ann. art. 18.01(b) (Vernon 2004). Whether the facts mentioned in an affidavit are adequate to establish probable cause depends on the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983), *Ramos v. State,* 934 S.W.2d 358 (Tex. Crim. App. 1996).

The facts found in the search warrant affidavit must show that "there is a fair probability that contraband or evidence of a crime will be found in that particular place. *Illinois v. Gates,* 462 U.S. at 238. Wholly conclusory

8

statements do not provide the magistrate with a substantial basis for determining the existence of probable cause.

In this case, the search warrant affidavit stated that the confidential informant knew that the Appellant was selling drugs but did not state how he/she knows that. R. II-58. The affiant of the affidavit would have no personal knowledge of this alleged selling since, according to the affidavit, only the confidential informant was inside the residence at the time of the alleged transaction so it all hinges on what the confidential informant saw and knows. If the affidavit is absent as to how said informant knew that Appellant was selling drugs, that in and of itself is vague and ambiguous language and does not support probable cause.

Therefore, based on faulty and misleading information, the magistrate that signed this search warrant was not given accurate information. Had the magistrate been properly advised as to what the affiant personally knows and not what is based on hearsay and speculation, it could have resulted in said warrant not being signed and the subsequent search not being effected. It is for these reasons that the Court of Appeals erred in its ruling. Therefore, this Court should grant review to determine whether the Court of Appeals properly applied the standard under *Gates* in determining if the search

warrant affidavit which led to the search of Appellant's apartment was supported by probable cause.

**II. DID THE COURT OF APPEALS PROPERLY DETERMINE THAT EVDENCE PRESENTED AT TRIAL WAS LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR POSSESSION OF A CONTROLLED SUBSTANCE 1 – 4 GRAMS – PG1 WITH INTENT TO DELIVER?**

The Court of Appeals held that, when viewing the evidence in the light most favorable to the prosecution, the logical force of the evidence lends itself to the conclusion that Appellant possessed the methamphetamine. *See* Exhibit A at 12. Appellant contends that the Court of Appeals erroneously determined that the evidence is legally and factually sufficient to support his conviction for possession of a controlled substance 1 – 4 grams – PG1 with intent to deliver. In reviewing the legal sufficiency of the evidence to support a conviction, the appellate court views all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007).

The facts establish that there were a total of seven people occupying

that apartment, each with access to the entirety of those premises. Also, it was established that Bass also shared the bedroom in which the controlled substance was found. Also, it was Bass who sold drugs to the confidential informant, not Appellant.

The dissent in this opinion also states that the facts do not support the conclusion that Appellant legally or factually possessed methamphetamine on the day in question. "That a person could be convicted of possession of a controlled substance on such tenuous connections is disturbing and our jurisprudence should not abide such a result, especially given that each of these facts establish that Bass, or any of the other six occupants of the house, could have possessed the methamphetamine." *See* Justice Meier dissent, page 2.

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789; *Clayton v. State*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann art. 38.04 (Vernon 1979). *Brown v. State*, 270 S.W.3d 564, 568 (Tex.Crim.App. 2008), *cert. denied*, 529 U.S. 1131

11

(2000). Thus, when performing a legal sufficiency review, the Court of Appeals may not re-evaluate the weight and credibility of the evidence and substitute their judgment for that of the trier of fact. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999), *cert. denied*, 529 U.S. 1131 (2000).

Viewing the evidence in the light most favorable to the verdict, the Court of Appeals erred in establishing that the evidence demonstrates that Appellant actually possessed a controlled substance. The only evidence that tended to show possession on the part of Appellant was by uncorroborated testimony from his co-defendant, Christy Jo Bass. *See Jenkins v. State*, 76 S.W.3d 709 (Tex. App. – Corpus Christi 2002, pet. ref'd). According to the *Jenkins* holding, two evidentiary requirements must be met: first, the State must prove that Appellant exercised actual care, custody, control and management over the contraband; and second, that he had knowledge that the substance that he had in his possession was contraband. *See Jenkins v. State*, 76 S.W.3d at 711.

In this case, no such corroboration exists. There were a total of five other people in the apartment excluding Appellant and his above named co-defendant at the time that the search warrant was executed who could have been called to corroborate the testimony of Ms. Bass but no such testimony

12

was proffered by the State. R. II-78. The identities of each of these people were ascertained at the time of arrest and, therefore, they could have been subpoenaed by the State to testify to corroborate Ms. Bass' testimony but no such testimony was presented. Further, the State's contention that they do not have to prove possession is faulty. R. III-165. The indictment in this case sets out what the State must prove in order to obtain a conviction in this case. The indictment reads that Appellant did "then and there *intentionally or knowingly possess* a controlled substance, namely methamphetamine of one gram or more but less than four grams, including any adulterants or dilutants, with intent to deliver said controlled substance (emphasis added). CR.-5. Possession, therefore, is an element of the offense that must be proven by the State.

This was an issue for the factfinder as well. The trial judge ruled that "from the testimony that the Court has heard, I don't see where the drugs have been placed in Mr. Yarborough's hands for him to, in fact, sell or deliver." R. III-163. The Court is well aware that one cannot deliver what one does not possess. In addition the Court noted the following:

THE COURT:     Well, if we had – I'd like to have another witness there, too, that – because there were several of them in there.

13

MS. ARMSTRONG: Right. And –

THE COURT: Who could tell us, who could corroborate what she's saying.

R. III-164.

Therefore, a review of the record in the light most favorable to the verdict fails to show that the commission of possession of a controlled substance with intent to deliver offense was more probable than not in the instant case. *See Jenkins v. State*, 76 S.W.3d at 711. The circumstantial evidence connecting Appellant to the commission of this offense therefore fails to show that Court's inferences supporting a conviction for possession of a controlled substance with intent to deliver were reasonable. See *Hooper v. State*, 214 S.W.3d at 16-17.

A review of all this testimony fails, even in the light most favorable to the verdict that the jurors could infer that Appellant possessed a controlled substance as alleged in the indictment because no evidence corroborated this alleged offense. There is no evidence offering a reasonable inference necessary to prove that Appellant committed this offense.

Without corroboration or any substantial link between the controlled substance and Appellant that would set him apart from the six other people

14

in the apartment, the Court of Appeals erroneously inferred a reasonable inference on whether or how this offense was committed. Such lack of basis of a reasonable inference is not found within a legal evidence sufficiency review of the record. *See Jackson v. Virginia*, 443 U.S. 326, 99 S.Ct. at 2793; *Clayton v. State*, 235 S.W.3d at 778. *See also* Tex. Health and Safety Code, Section 481.112(C).

As a result, the evidence is not legally sufficient to support Appellant's conviction. Therefore, the Court of Appeals erred in determining that there was factual and legal sufficiency of the evidence to determine that Appellant possessed the methamphetamine in question. Therefore, this Court should grant review of this issue.

## III. DID THE COURT OF APPEALS ERR IN FINDING THAT THE TRIAL COURT'S RULING IN FAVOR OF APPELLANT ON A MOTION FOR DIRECTED VERDICT AND SUBSEQUENT REVERSAL OF THAT RULING DID NOT RISE TO THE LEVEL OF DOUBLE JEOPARDY?

Appellant contends that his conviction and sentence for possession of a controlled substance 1 – 4 grams – PG1 with intent to deliver violates his right under the Double Jeopardy Clause against a second prosecution for the same offense after acquittal. *See* U.S. Const. amend. V; Tex. Const. art. 1, § 14. This is in direct opposition to the Court of Appeals' finding that the trial

15

court acted within its authority to overturn its previous granting of a motion for directed verdict and that no double jeopardy violation occurred. *See* Exhibit A at 14.

The Double Jeopardy Clauses of both the United States Constitution and the Texas Constitution provide protection against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *See* U.S. Const. amend V; Tex. Const. art. 1, § 14, Tex. Code Crim. Proc. Ann. art. 1.10 (Vernon 1997); *Illinois v. Vitale*, 447 U.S. 410, 415, 100 S. Ct. 2260, 2264, 65 L.Ed.2d 228 (1980); *Ex parte Peterson*, 738 S.W.2d 688, 689 (Tex. Crim. App. 1987). Because Appellant's conviction was obtained for the same offense after an acquittal, Appellant's double jeopardy argument invokes the prohibition against the subsequent conviction. *Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969), *Moreno v. State*, 294 S.W.3d 594 (Tex. Crim. App. 2009).

As far as when jeopardy attaches in a bench trial, Texas law has stated that jeopardy attaches as soon as Appellant entered his plea of "not guilty" to the indictment. R. II-9, *State v. Torres*, 805 S.W.2d 418 (Tex. Crim. App. 1991).

16

A defendant is acquitted when "the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *See Moreno v. State,* 294 S.W.3d at 598. Specifically, in *Moreno,* the appellant had asked the trial judge for a directed verdict prior to the state resting its case in chief. This motion for directed verdict was granted by the trial judge, who cited that the state had failed to meet the elements of the offense. Therefore, when a trial ends, after jeopardy has attached, with a judgment of acquittal, "whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict," any further prosecution, including an appeal, is prohibited by the Double Jeopardy Clause. *Moreno v. State,* 294 S.W.3d at 598.

Similarly, in this case, Appellant requested a motion for instructed verdict after the state rested its case in chief. R. III-155. The trial court then granted Appellant's motion for instructed verdict. R. III-162. According to the definition of acquittal as laid out in *Moreno,* jeopardy has attached, the trial has concluded and any further prosecution at that point is double jeopardy barred. Put simply, just because the state continues to argue after the trial court's ruling granting Appellant's motion for instructed verdict

17

does not mean that the trial continues. The trial effectively ends once the trial judge grants Appellant's motion for instructed verdict. That ruling is the equivalent of a not guilty verdict. Therefore, when the trial court later reversed its decision on Appellant's motion for instructed verdict (R III-165), that decision essentially began the trial anew in violation of the Double Jeopardy Clause.

See also *Evans v. Michigan,* 568 U.S. ____, 133 S. Ct. 1069, 185 L.Ed.2d 124 (2013), in which the Court held that, if a person accused of a crime receives a direct acquittal, regardless of the reasoning behind the ruling by the trial Court, the Double Jeopardy Clause bars a second trial of that person for the same crime, even if the person was acquitted in error. "To permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the Defendant so that 'even though innocent, he may be found guilty'". *Green v. United States,* 355 U.S. 184, 188, 78 S. Ct. 221, 2 L.Ed.2d 199 (1957).

A fact finder's verdict of acquittal terminates jeopardy and verdicts of acquittal cannot be overturned on appeal even if there is overwhelming proof of a defendant's guilt or even if the trial judge committed reversible error in

ruling on an issue at some point during the proceedings. It is for these reasons that the Court of Appeals erred in determining that Double Jeopardy was not violated. This Court should grant review of this issue.

## PRAYER FOR RELIEF

For the above reasons, Appellant prays that this Court grant Appellant's petition for discretionary review and reverse the Court of Appeals and remand this cause for the appropriate proceedings.

Respectfully submitted,

\_\_\_\_/s/ Barry J. Alford_____
Barry J. Alford
State Bar No. 00783534
1319 Ballinger Street
Ft. Worth, Texas 76102
Telephone: (817) 335-5229
Facsimile: (817) 335-4944
E-mail: barryalford13@gmail.com

Attorney for Appellant

## CERTIFICATE OF SERVICE

On this the 7th day of May, 2015, a true copy of this brief was e-mailed to Hon. Debra Windsor, Assistant Criminal District Attorney, Counsel for the State, 401 W. Belknap, Fort Worth, Texas 76196.


_____/s/ Barry J. Alford_____
Barry J. Alford
Attorney for Appellant


## CERTIFICATE OF TYPEFACE AND WORD COUNT COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. Proc. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14 point for text and 12 point for footnotes. This document also complies with the word count limitations of Tex. R. App. Proc. 9.4(i), if applicable, because it contains 2,997 words, excluding any parts exempted by Tex. R. App. Proc. 9.4(i)(1).


_____/s/ Barry J. Alford_____
Barry J. Alford
Attorney for Appellant

**EXHIBIT A**


CHRISTOPHER YARBOROUGH                                    APPELLANT

V.

THE STATE OF TEXAS                                            STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 1313733D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

After a bench trial, Appellant was convicted of possession with intent to deliver methamphetamine in an amount of one gram or more but less than four grams. *See* Tex. Health & Safety Code Ann. 481.112(c) (West 2010). The trial court sentenced him to twenty years' confinement. In four points, Yarbrough

---

[1]*See* Tex. R. App. P. 47.4.

complains of the denial of his motion to suppress, the sufficiency of the evidence, and the trial court's withdrawal of its oral ruling granting Yarbrough's motion for directed verdict. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Yarborough and his girlfriend Christi Jo Bass lived together in an apartment in Arlington, Texas. Police received a tip from a confidential informant (CI) that Yarborough and Bass were selling methamphetamine from the apartment. Police arranged for the CI to make a controlled buy of methamphetamine at the apartment, and the CI purchased methamphetamine from Bass at the apartment. Detective Eric Curtis of the Tarrant County Sheriff's Office obtained a warrant to search the apartment. Detective Curtis, along with several other officers, executed the warrant a few hours later.

Seven people, including Yarborough and Bass, were inside the apartment when the police executed the search warrant. The apartment had three bedrooms; police determined that Yarborough and Bass shared one bedroom based on items found in the bedroom connecting them to that room and based on interviews conducted by police. Police found two safes underneath the bed in that bedroom. The larger safe did not contain any drugs or drug paraphernalia. The smaller safe contained a digital scale, fifty to one hundred small plastic baggies, and 3.55 grams of methamphetamine. The phrase "Boss + CJo"—which police learned were names for Yarborough and Bass—was handwritten with a hot pink marker on the back of the digital scale. Police also found two

2

syringes filled with liquid methamphetamine inside a dresser drawer in that bedroom. Police searched the seven individuals and found 27.92 grams of methamphetamine in a purse belonging to one of the individuals, Cindy Barton. Yarborough had $650 in cash in his pocket.

Yarborough and three other individuals—Christi Jo Bass, Cindy Barton, and Brian Perry—were arrested for possession of a controlled substance with the intent to deliver.

### III. MOTION TO SUPPRESS

In his first point, Yarborough argues that the trial court abused its discretion by denying his motion to suppress the fruits of the search warrant because the search warrant affidavit was vague and ambiguous.

A magistrate may not issue a search warrant without first finding "probable cause" that a particular item will be found at a particular location. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010). Probable cause for a search warrant exists if, under the totality of the circumstances presented to the magistrate, there is at least a "fair probability" or "substantial chance" that contraband or evidence of a crime will be found at the specified location. *Illinois v. Gates*, 462 U.S. 213, 238, 243 n.13, 103 S. Ct. 2317, 2332, 2335 n.13 (1983); *Flores*, 319 S.W.3d at 702. In reviewing a magistrate's decision to issue a warrant, we will uphold the magistrate's probable cause determination "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236, 103 S. Ct. at

3

2331; *see State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). Both appellate courts and trial courts alike must give great deference to a magistrate's implicit finding of probable cause. *McLain*, 337 S.W.3d at 271.

In assessing the sufficiency of an affidavit for a search warrant, the reviewing court is limited to the four corners of the affidavit. *Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 921 (1993). The reviewing court should interpret the affidavit in a common-sense and realistic manner, recognizing that the magistrate was permitted to draw reasonable inferences. *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006). The reviewing court should not analyze the affidavit in a hyper-technical manner. *McLain*, 337 S.W.3d at 271.

In the affidavit in support of the search warrant in this case, Detective Curtis stated that the CI had recently notified him that Yarborough and Bass were distributing methamphetamine from the Arlington apartment. Detective Curtis stated that he had met with the CI "[w]ithin the past 24 to 72 hours" and that the CI had stated that the CI could purchase methamphetamine at the apartment. The Tarrant County Sheriff's Office Narcotics/Vice Unit arranged for a controlled buy, searched the CI's person and vehicle for contraband and money prior to the controlled buy, and sent the CI to the apartment to purchase methamphetamine with departmental funds. The CI purchased a useable amount of methamphetamine from Bass at the apartment. Detective Curtis stated, "While inside of the room, the CI observed several plastic bags with a crystal like

4

substance inside of them ready for distribution. The CI knew the crystal like substance to be methamphetamine." The substance that the CI purchased at the apartment tested positive for methamphetamine. The affidavit also stated that the CI had told Detective Curtis that "within the last 24 to 72 hours, [the CI] observed . . . Yarbrough [sic] . . . within the suspected place and to be in possession of a substance [that the CI] recognized to be methamphetamine; the substance appeared to be packaged for distribution."

Detective Curtis stated in his affidavit that he believed the CI to be credible and reliable. Detective Curtis alleged,

> Affiant is aware that officers of the Tarrant County Sheriff's Office Narcotics Unit have utilized said Confidential Informant to make covered buys that have led to narcotics seizures and/or arrests two times in the recent past. Affiant is aware that said Confidential Informant has demonstrated during these past investigations the ability to accurately recognize illegal narcotics such as methamphetamine. Those same seized substances were tested by authorized chemists, and/or a presumptive test, and found to be controlled substances. Affiant is aware that officers of the Tarrant County Sheriff's Office Narcotics Unit have verified and/or corroborated information provided by said Confidential Informant during the past investigations and found it to be true and correct. Affiant requests that the identity of said Confidential Informant remain anonymous for his/her safety, and for the success of other ongoing narcotics investigations.

Detective Curtis also stated in his affidavit that the FBI had identified Yarborough as a member of the Aryan Brotherhood. He requested authorization to enter the apartment without first knocking and announcing the officers' presence and purpose because "to do so would be futile, dangerous, and otherwise inhibit the effective investigation of the offense." In support of his request, he stated that

5

the Aryan Brotherhood is a violent street gang with a history of violence against police officers.

On appeal, as he did at the suppression hearing, Yarborough complains that the affidavit fails to state how the CI knew that Bass and Yarborough were selling methamphetamine, that the officers did not witness the controlled buy and had to rely on the CI's statements of what the CI saw in the apartment, and that Detective Curtis could not rely on other officers' determinations that the CI had been credible in the past. But reading the affidavit as a whole, as we must, and considering all of the facts in the affidavit along with reasonable inferences from those facts, we hold that the facts stated in the affidavit were sufficient to support the magistrate's determination that there was a fair probability that methamphetamine would be found in the apartment. *See Gates*, 462 U.S. at 238, 103 S. Ct. at 2332; *McLain*, 337 S.W.3d at 273.

Information provided by an informant must contain some indicia of reliability or be reasonably corroborated by police before it can be used to justify a search. *Gates*, 462 U.S. at 242, 103 S. Ct. at 2334. The CI here provided a specific reason for the CI's belief that Yarborough and Bass were selling methamphetamine from the apartment—the CI had observed Yarborough in the apartment with methamphetamine that appeared to be packaged for distribution and stated that the CI could purchase methamphetamine at the apartment. And Detective Curtis stated that he had determined that the CI was credible and reliable based on other officers' dealings with this CI in the past; Detective Curtis

6

could rely on other officers' determinations that the CI was credible. *See, e.g., Gish v. State*, 606 S.W.2d 883, 886 (Tex. Crim. App. [Panel Op.] 1980) ("Observations reported to the affiant by other officers engaged in the investigation can constitute a reliable basis for issuing a warrant."); *Blake v. State*, 125 S.W.3d 717, 727 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (rejecting claim that officer could not rely on another officer's assertions that an informant was reliable and credible as support for a search warrant). Detective Curtis corroborated the information provided by the CI by conducting a controlled buy in which the CI purchased a useable amount of methamphetamine at the apartment. *See Jones v. State*, 364 S.W.3d 854, 857, 862 (Tex. Crim. App.) (holding that supporting affidavit in which officer stated that an informant had recently told officer that drugs were present at residence and then conducted a controlled buy using a second informant provided probable cause justifying search warrant), *cert. denied*, 133 S. Ct. 370 (2012). Although the affidavit does not state whether any officer maintained surveillance on the informant during the controlled buy, it is not necessary for an officer to have done so to present a magistrate with sufficient facts to reasonably conclude that a search of the apartment would probably reveal methamphetamine and evidence of its distribution, especially in light of Detective Curtis's statements regarding the CI's credibility. *See, e.g., State v. Griggs*, 352 S.W.3d 297, 305 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *cf. State v. Ozuna*, 88 S.W.3d 307, 313 (Tex. App.—San Antonio 2002, pet. ref'd) (upholding suppression of evidence where search

7

warrant affidavit contained no evidence that informants had been used in the past and proven to be reliable).

Reviewing the entirety of the information contained in Detective Curtis's affidavit, we hold that the trial court did not err by denying Yarborough's motion to suppress based on the issuing magistrate's determination that the search warrant affidavit contained sufficient facts to justify a conclusion that a search of the apartment would probably uncover methamphetamine and evidence of its distribution. *See McLain*, 337 S.W.3d at 271. We overrule Yarborough's first point.

## IV. SUFFICIENCY OF THE EVIDENCE

In his second point, Yarborough argues that the evidence is insufficient to support his conviction. He argues that the evidence failed to show that he actually possessed a controlled substance and that the only evidence tending to show his possession was the uncorroborated testimony of Bass.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to

8

draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

To prove possession, the State must prove that the accused (1) exercised actual care, custody, control, or management over the substance and (2) knew that the matter possessed was a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.002(38) (West Supp. 2014); Tex. Penal Code Ann. § 1.07(a)(39) (West Supp. 2014); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). When the accused does not have actual possession of the controlled substance or exclusive possession of the location where the controlled substance was found, additional independent facts or circumstances connecting

9

or linking the accused to the knowing possession of the contraband must support a conclusion that the accused had possession over the contraband. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). This is because, whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the contraband was more than fortuitous. *Evans*, 202 S.W.3d at 161. The "affirmative links rule" is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. *Poindexter*, 153 S.W.3d at 405–06.

Relevant non-exclusive links tending to connect a defendant to knowing possession include (1) whether the defendant was present when the search was conducted, (2) whether the contraband was in plain view, (3) whether the contraband was in close proximity to and accessible by the defendant, (4) whether the defendant was under the influence of narcotics when arrested, (5) whether the defendant possessed other contraband or narcotics when arrested, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia was present, (11) whether the accused owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether the accused was found with a large amount of cash, and (14) whether the conduct of the accused indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12;

10

*Isbell v. State*, 246 S.W.3d 235, 238 (Tex. App.—Eastland 2007, no pet.). It is not the number of links that is dispositive but the logical force of all of the evidence. *Evans*, 202 S.W.3d at 162.

Yarborough complains on appeal that the only evidence connecting him to the drugs found in the apartment was the uncorroborated testimony of his co-defendant, Bass. But even excluding her testimony, the record reveals ample evidence tending to connect him to the methamphetamine and drug paraphernalia found in the apartment. Yarborough was present inside the apartment when police executed the search warrant. Police found 3.55 grams of methamphetamine, small baggies, and a digital scale in a small combination safe under the bed in the bedroom shared by Yarborough and Bass. Detective Curtis testified that the scale, the plastic baggies, and the large amount of methamphetamine indicated that the methamphetamine was intended for distribution. The scale had the words "Boss + CJo" handwritten on it. Detective Curtis testified that his investigation revealed that "Boss" referred to Yarborough and that "CJo" referred to Bass. The State had Yarborough show the trial court his knuckles, which were tattooed with the word "Boss." Police also found two syringes loaded with liquid methamphetamine in a dresser drawer in the bedroom. The bedroom also contained Yarborough's personal items, including legal documents with his name and signature on them, men's clothing in his size, and a bag containing men's personal hygiene items. These direct and circumstantial links proved by the State establish that Yarborough's connection

11

with the methamphetamine was more than just fortuitous. *See, e.g., Figueroa v. State*, 250 S.W.3d 490, 501 (Tex. App.—Austin 2008, pet. ref'd) (holding defendant sufficiently linked to cocaine found underneath a bed in bedroom where documents, prescription bottle, and credit card—all with defendant's name on them—were found); *Cooper v. State*, 852 S.W.2d 678, 681 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (holding that two envelopes addressed to defendant in room where drugs were found constituted link between defendant and drugs).

Viewing all of the evidence in the light most favorable to the prosecution, as we must, and excluding the testimony of Yarborough's co-defendant Bass, we hold that the logical force of the evidence lends itself to the conclusion that Yarborough possessed the methamphetamine. The links to Yarborough are sufficient to permit the trial court, as the finder of fact, to find beyond a reasonable doubt that Yarborough knowingly possessed between one and four grams of methamphetamine with intent to deliver. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Evans*, 202 S.W.3d at 162 n.12. Accordingly, we hold that the evidence is sufficient to support Yarborough's conviction, and we overrule his second point.[2]

---

[2]Yarborough argues in his third point that the evidence is factually insufficient to support his conviction, but we review the sufficiency of the evidence under the single sufficiency standard set out in *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. *Brooks v. State*, 323 S.W.3d 893, 895, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)). Consequently, we overrule his third point.

## V. Double Jeopardy

In his fourth point, Yarborough argues that the trial court erred by finding him guilty in contradiction of its earlier ruling granting his motion for instructed verdict, thus violating double jeopardy.

At the close of the State's case, Yarborough made an oral motion for a directed verdict, arguing that the evidence was insufficient to affirmatively link him to the methamphetamine found in the safe. The trial court initially granted the motion, but then the trial court continued to discuss the issues with the attorneys. After hearing more arguments from both sides and discussing the court's concerns, the trial court announced that it was "going to reverse its decision on that" and denied Yarborough's motion for directed verdict. Yarborough did not object and began his case-in-chief.

The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense. U.S. Const. amend. V. Generally, this clause protects against a second prosecution for the same offense after acquittals. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006). In the double jeopardy context, determination of whether an acquittal has occurred "is not controlled by the form of the judge's action" but instead by examining whether the judge's ruling, "whatever its label, actually represent[ed] a resolution, correct or not, of some or all of the factual elements of the offense charged." *State v. Blackshere*, 344 S.W.3d 400, 406–

13

407 (Tex. Crim. App. 2011) (citing *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S. Ct. 1349, 1354–55 (1977)).

Yarborough did not raise a double jeopardy objection at trial, but he may raise it for the first time on appeal if "the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and . . . enforcement of usual rules of procedural default serves no legitimate state interests." *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000) (footnotes omitted).

The trial court's initial ruling on Yarborough's motion for directed verdict was in the nature of an acquittal, but during the same discussion in which the trial court granted the motion, the trial court reconsidered its ruling and denied the motion. The trial court was within its discretion to reconsider this ruling. *See Rodriguez v. State*, 852 S.W.2d 516, 520 (Tex. Crim. App. 1993) (holding that trial court acted within its authority by withdrawing its order granting a mistrial when trial court granted mistrial, immediately conferenced with attorneys, and then withdrew its ruling after conference); *Carter v. State*, No. 05-96-00805-CR, 1998 WL 83799, at *1 (Tex. App.—Dallas Feb. 24, 1998, no pet.) (mem. op., not designated for publication) (applying *Rodriguez* to trial court's withdrawal of its initial ruling granting appellant's motion for directed verdict). Because the trial court acted within its authority by withdrawing its initial grant of a directed verdict in favor of Yarborough after further argument by the parties, no double jeopardy violation occurred. Thus, we overrule Yarborough's fourth point.

14

## VI. Conclusion

Having overruled Yarborough's four points, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  WALKER and MEIER, JJ.; and CHARLES BLEIL, J. (Senior Justice, Retired, Sitting by Assignment).

MEIER, J. filed a dissenting opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 16, 2015

15



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00117-CR

CHRISTOPHER YARBOROUGH                                   APPELLANT

V.

THE STATE OF TEXAS                                            STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 1313733D

----------

## DISSENTING MEMORANDUM OPINION[1]

----------

I respectfully dissent from the majority's holding that when viewing the evidence in light most favorable to the prosecution that the trial court could have found beyond a reasonable doubt that Yarborough knowingly possessed the methamphetamine found under a bed in a bedroom in an apartment where seven individuals were found at the time police conducted their search. *Jackson v.*

---

[1]*See* Tex. R. App. P. 47.4.

*Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 2793 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

The trial court determined that Yarborough's presence at the apartment in which methamphetamine was found under a bed that evidence shows was a shared room between him and co-defendant Bass, coupled with the presence of legal documents with Yarborough's name and signature on them, men's clothing, a bag containing men's personal hygiene items, and the fact that the methamphetamine along with drug paraphernalia were found in a safe containing a set of digital scales with the nicknames of both he and co-defendant Bass handwritten on them in pink marker, as well as $650 cash found on Yarborough's person were sufficient "links" to find Yarborough guilty beyond a reasonable doubt of possessing the methamphetamine found under the bed.

That a person can be convicted of possession of a controlled substance on such tenuous connections is disturbing, and our jurisprudence should not abide such a result, especially given that each of these facts establish that Bass, or any of the other six occupants of the house, could have possessed the methamphetamine. *See Meyers v. State*, 665 S.W.2d 590, 595 (Tex. App.—Corpus Christi 1984, pet. ref'd) ("Control of the apartment is not synonymous with control of the contraband when the appellant does not have sole access.")

In fact, other links not discussed by the majority tend to connect Bass to the methamphetamine instead of Yarborough. Indeed, the officers' search warrant was predicated on a controlled buy that Bass conducted with the

2

confidential informant whereby Bass sold methamphetamine to the confidential informant. The logical inference from this purchase is that Bass, not Yarborough, possessed the methamphetamine. The nicknames found inscribed on the digital scales was done so using a hot pink marker. The logical inference from the writing and the color of the marker used to inscribe the digital scales is that the scales belonged to Bass, or at a minimum that the inscription was written by Bass. Furthermore, one of the other occupants of the apartment was found to have possessed 27.92 grams of methamphetamine in her purse. The logical inference from this is that both Bass and the other female individual were the ones possessing and selling methamphetamine. And $650 cash found on Yarborough is simply insufficient of itself to prove possession.

That Yarborough may have previously possessed methamphetamine and, possibly, was even previously dealing drugs, is not sufficient to find that he possessed the methamphetamine found under the bed. The evidence in the record linking Yarborough to the methamphetamine is simply not enough to establish possession. The State proved no more than a mere probability or strong suspicion, that Yarborough jointly possessed the methamphetamine. But "[p]roof amounting only to strong suspicion or mere probability will not suffice" to support a conviction for possession. *See Roberson v. State*, 80 S.W.3d 730, 742 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Possession means more than merely "being where the action is." *Meeks v. State*, 692 S.W.2d 504, 511 (Tex. Crim. App. 1985) (*quoting Wilkes v. State*, 572 S.W.2d 538, 540 (Tex. Crim. App.

3

1978)).  While recognizing that the State need only prove joint possession, here joint possession among seven people is a stretch.  I would hold that the State failed to prove that Yarborough possessed the methamphetamine found under the bed and therefor I dissent.

/s/ Bill Meier
BILL MEIER
JUSTICE

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 16, 2015

4